Christopher R. Nolan
Clayton J. Vignocchi
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Tel.: (212) 513-3200
Fax: (212) 385-9010
E-mail: chris.nolan@hklaw.com
         clayton.vignocchi@hklaw.com

Attorneys for Plaintiff
*Geogas Trading SA*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEOGAS TRADING SA,<br><br>    Plaintiff,<br><br>-against-<br><br>AEGEAN BUNKERING (USA) LLC,<br><br>    Defendant. | 19 CV _____ (____)<br><br>**COMPLAINT** |

Plaintiff, Geogas Trading SA ("Geogas" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its Complaint against Aegean Bunkering (USA) LLC ("Aegean" or "Defendant"), alleges as follows:

## JURISDICTION, PARTIES & VENUE

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and falls exclusively under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

2. Geogas Trading SA is a company organized under the laws of Switzerland with

a principle place of business at 28 Boulevard du Pont-d'Arve, Geneva, CH-1205, Switzerland.

3. Upon information and belief, Aegean Bunkering (USA) LLC is a company organized under the laws of New York, with a principle place of business at 52 Vanderbilt, Ave., Suite 1405, New York, New York, 10017.

4. Jurisdiction and Venue is appropriate in this Court based upon Clause E of Aegean's "General Terms and Conditions for Marine Fuels" ("Aegean's General Conditions"), which provide in relevant part that "Each Party expressly submits to the exclusive jurisdiction of any New York State court or federal District Court of the United States of America sitting in the Borough of Manhattan in New York City."

## FACTUAL BACKGROUND

5. At all material times, Geogas was the long-term time charterer of the M/V PRINS ALEXANDER (the "Vessel"). Under the terms of the charter party, Geogas is bound to provide and purchase bunkers (or fuel) for the Vessel.

6. The Vessel (IMO No. 9242209) is a Marshall Islands flagged liquefied gas carrier that is 584 feet long and 23,948 gross tons.

7. Aegean is an independent physical supplier of marine bunker fuels for ships, including liquefied gas carriers such as the Vessel. Aegean holds itself out as being the leading independent physical supplier of marine bunker fuels and lubricants worldwide. *See generally* http://www.ampni.com/.

8. On September 6, 2018, Geogas ordered 380 metric tons ("MT") of intermediate fuel oil (RMG-380, S<3.5%) ("IFO") and 100MT of Marine Gas Oil ("MGO") from Aegean through a broker, non-party LQM Petroleum Services, LLC ("LQM"), for delivery to the Vessel at Marcus Hook berth in Philadelphia, Pennsylvania on September 11, 2018. Geogas specified that both grades were to be ISO 8217:2010 compliant.

9. On September 6, 2018, Aegean confirmed Geogas's request with an order confirmation and a copy of Aegean's General Conditions. A true and correct copy of Aegean's order confirmation is annexed as **Exhibit A**. A true and correct copy of Aegean's General Conditions is attached as **Exhibit B**.

10. On September 14, 2018, Aegean delivered 380.920 MT of IFO[1] to the Vessel at Marcus Hook in Philadelphia, Pennsylvania (the "Marcus Hook Bunkers"). As requested under Aegean's General Conditions, samples of the Marcus Hook Bunkers were taken by representatives of both Geogas and Aegean. Four samples were taken in total: Sample (1) – (Vessel – 201876); Sample (2) – (Aegean – 201891); Sample (3) – (Aegean – 201871); Sample (4) – (MARPOL[2] Annex[3] – 201866). Aegean issued a Marine Fuel Bunker Delivery Note ("BDN") stating the date time and location of loading, the quantity and grade of IFO loaded, and listing the fuel samples taken. A true and correct copy of Aegean's BDN, dated September 14, 2018, is attached as **Exhibit C**.

11. On September 21, 2018, the Vessel's owner, Anthony Veder Rederijzaken B.V. (the "Vessel Owner") submitted the Vessel's MARPOL Annex sample (#201866) to Lloyd's Register (a testing facility) for analysis. Lloyd's Register performed a series of tests on the Marcus Hook Bunkers and issued a report on the results. A true and correct copy of the Lloyd's Register Sample Analysis Report ("Lloyd's Report") is annexed as **Exhibit D**. The Marcus Hook Bunkers were not ISO 8217:2010 compliant as the IFO tested above specification for density and viscosity. The density exceeded the specification limit (991.0 Max KG/M3) with a test result of 997.0 KG/M3 and viscosity exceeded the specification limit (380 MAX cST) with a test result of 594.3 cST.

---

[1] MGO was also delivered to the Vessel at Marcus Hook. There were no reported issues with the MGO.
[2] "MARPOL" refers to the International Convention for the Prevention of Pollution from Ships, 1973 (as modified).
[3] MARPOL Annex VI (Prevention of Air pollution from Ships) requires representative bunker samples to be taken.

12. On September 25, 2018, Geogas timely settled payment for the Marcus Hook Bunkers. A true and correct copy of Aegean's invoice for the Marcus Hook Bunkers is attached as **Exhibit E**. The total amount paid for the Marcus Hook Bunkers was $240,453.90, which included the undisputed MGO delivery. The total cost of the off-specification IFO delivery, together with tax, barging, and booming is $171,008.37.

13. Following full payment for the product, Geogas provided the requisite notice of the off-specification bunkers to LQM, who in turn placed Aegean on notice of the off-specification Marcus Hook Bunkers as required under Aegean's General Conditions.

14. Having received notice of the off-specification IFO delivery, Aegean then submitted Aegean sample (# 201871) to SGS (a testing facility) for additional analysis. SGS performed a series of tests on the Marcus Hook Bunkers and issued a report on the results. A true and correct copy of the SGS Certificate of Analysis ("SGS Report"), dated October 22, 2018, is annexed as **Exhibit F**. The SGS Report confirmed the Marcus Hook Bunkers were not ISO 8217:2010 compliant as the IFO tested above specification for density and viscosity. The density exceeded the specification limit (991.0 Max KG/M3) with a test result of 0.9912 g/ml (991.2 KG/M3) and viscosity exceeded the specification limit (380 MAX cST) with a test result of 400.4 cST.

15. Clause H of Aegean's General Conditions states that the Seller's (Aegean) independent laboratory testing of composite samples taken from the Vessel from which delivery is made shall be conclusive for purposes of determining the quality of marine fuels.

16. Despite the off-specification confirmation analysis, Aegean has failed to arrange for the remove the off-specification Marcus Hook Bunkers from the Vessel.

17. As a direct result of Aegean supplying the Vessel with the off-specification Marcus Hook Bunkers and their failure to remove said bunkers from the Vessel after becoming

aware that said bunkers were off-specification, Geogas has incurred and will continue incurring substantial costs associated with continued storage of the unusable fuel onboard the Vessel including the costs of the off-specification IFO itself, costs of lost time (associated with storing and discharging the off-specification fuel), the costs of additional port expenses (to discharge the off-specification fuel), and the purchase of replacement IFO (to the extent replacement fuel must be purchased at a loss). As best as can be presently estimated, Geogas has suffered damages in excess of $171,008.37 plus interest and costs.

## COUNT I – BREACH OF CONTRACT

18. Plaintiff Geogas repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth therein.

19. Defendant confirmed Geogas's bunker delivery request with an order confirmation and a copy of Aegean's General Conditions. *See* **Exhibits A & B**.

20. Defendant delivered or caused to be delivered to the Vessel 380.92 MT of off-specification IFO – the Marcus Hook Bunkers – which was not compliant with ISO 8217:2010 standards.

21. Defendant breached its sales contract with Geogas by delivering non-conforming goods that were off-specification and not fit for their intended purpose. As a direct and proximate cause of Defendant's breach of its sales contract with Geogas, Geogas has incurred and continues to incur substantial damages in an amount estimated to exceed $171,008.37 plus interest and costs.

## COUNT II – BREACH OF WARRANTY

22. Plaintiff Geogas repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth therein.

23. Aegean delivered bunkers to the Vessel which were unreasonably dangerous,

defective, and unfit for their intended purpose.

24. In delivering to the Vessel bunkers that were off-specification, Defendant breached the express warranty that the goods would be ISO 8217:2010 complaint.

25. Furthermore, by delivering to the Vessel fuel oil that was off-specification such that the very use of the fuel could harm to the Vessel's main engine, Defendant breached the implied warranties of the general maritime law of the United States and/or the Uniform Commercial Code that the fuel oil be fit for its intended purpose.

26. As a direct and proximate cause of Defendant's breach of warranties, Geogas has incurred and continues to incur substantial damages in an amount estimated to exceed $171,008.37 plus interest and costs.

## COUNT III – NEGLIGENCE

27. Plaintiff Geogas repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth therein.

28. By delivering to the Vessel fuel oil that was off-specification such that the very use of the fuel can harm an engine or equipment, Defendant breached the reasonable duty of care of a reasonable fuel provider.

29. As a direct and proximate cause of Defendant's breach of its duty of care, Geogas has incurred and continues to incur substantial damages in an amount estimated to exceed $171,008.37 plus interest and costs.

## COUNT IV – PRODUCTS LIABILITY

30. Plaintiff Geogas repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth therein.

31. Clause 5 in ISO 8217:2010 and Regulation 18.3 of MARPOL Annex VI require that marine fuels not contain any material in a concentration that adversely affects the

performance of machinery. All suppliers selling product to meet ISO 8217:2010 have a duty to test those cargoes in advance.

32. The fuel oil Defendant delivered to the Vessel was off-specification, contaminated, and otherwise unusable; thus, the fuel oil was defective and unreasonably dangerous, for which Defendant is strictly liable to Geogas, including the failure to properly market the fuel.

33. As a direct and proximate cause of Defendant's delivery of defective and unreasonably dangerous fuel oil, Geogas has incurred and continues to incur substantial damages in an amount estimated to exceed $171,008.37 plus interest and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Geogas Trading SA demands judgment against Aegean Bunkering (USA) LLC as follows:

(i) Enter judgment in favor of Geogas Trading SA and against Aegean Bunkering (USA) LLC for damages as may be finally determined by this Court together with interest, attorneys' fees, and costs; and

(ii) That the Court grant such other and further relief as may be just and proper in the circumstances.

Dated: New York, New York
March 13, 2019

HOLLAND & KNIGHT LLP

By: _____
Christopher R. Nolan
Clayton J. Vignocchi
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Tel.: (212) 513-3200
Fax: (212) 385-9010

Email:  chris.nolan@hklaw.com
clayton.vignocchi@hklaw.com

Attorneys for Plaintiff,
*Geogas Trading SA*